IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRANSCOM ENHANCED SERVICES,
INC.,

      Plaintiff,

v().                                                  CIVIL ACTION NO.
                                                      1:12-cv-03492-JEC
GEORGIA PUBLIC SERVICE
COMMISSION, et al.,

      Defendants.

## ORDER & OPINION

This matter is presently before the Court on defendant AT&T Georgia's ("AT&T") Motion to Dismiss [21], TDS defendants' Partial Motion to Dismiss [22], and TDS defendants' Motion to Stay or Bifurcate [23].

After these motions had been filed, the parties submitted a Joint Preliminary Report and Discovery Plan ("Joint Report")[30]. In the Joint Report, the parties have agreed that the most efficient way to proceed is by first conducting the administrative review portion of the case (Count 8 and possibly Count 1) before addressing plaintiff's other claims in Counts 2-7. (*Id.* at 13.) Resolution of plaintiff's administrative appeal may eliminate the need to address any of the plaintiff's other claims.

The Court agrees with this approach, which will render moot the

TDS defendants' motion to dismiss and to stay/bifurcate. It also renders moot most of defendant AT&T's motion to dismiss.

## BACKGROUND

This case not only involves complex technology, but it also has a complicated procedural history. For clarity's sake, the Court will address only those aspects of each that are pertinent to the present discussion.

In 1996, in an effort to promote competition and reduce regulation, Congress passed the Telecommunications Act ("Act"). The Act mandated that carriers interconnect with one another and that local exchange carriers who had already established a telecommunications infrastructure share elements of this existing structure with new competitors. 47 U.S.C. § 201(a). When these new competitors use these existing elements, however, the Act requires them to compensate the incumbent local exchange carriers ("ILECs" or "carriers"). *See id.*

The amount of compensation to which a carrier is entitled depends on whether the user's traffic is classified as local or long distance, and also whether the calls are made from a wireless device as opposed to a landline phone. Long distance calls are subject to higher fees, known as "access charges." A call's status as local or long distance can change based on whether the call is made from a wireless or a landline device. Further, the charges only apply to

2

common carriers, and not to other entities, such as enhanced service providers.  *See* 47 U.S.C. § 201.  The dispute between the parties centers around the appropriate regulatory classification for Transcom and the services it provides.

The events precipitating the present federal litigation began on June 11, 2010, when carrier TDS Telecom, on behalf of its subsidiaries (collectively, "TDS defendants"), filed a complaint before the Georgia Public Service Commission ("PSC" or the "Commission"). (PSC Order, attached as Ex. 1 to Am. Compl. [2].) In this complaint, the TDS defendants alleged that Transcom and its affiliate, Halo,[1] had refused to pay applicable access charges pursuant to the Act.  (*Id*. at 1.)  Carrier AT&T later joined the action as an intervenor, arguing that Halo was also in violation of the interconnection agreement with AT&T because Halo was sending traffic to be terminated on AT&T's network that did not originate on a wireless device, as mandated by the agreement.  (*Id*. at 2-3.) Essentially, the defendants argued that Transcom should have been paying access charges for using elements of the carriers'

---

[1] After TDS's complaint had been filed before the Commission, Halo filed for Chapter 11 bankruptcy.  Halo is now in liquidation under Chapter 7 and the TDS defendants state that they have been informed that the court-appointed trustee in the Chapter 7 bankruptcy has declined to pursue any litigation initiated by Halo. (TDS's Mot. to Dismiss [23] at 6.)  Thus, Halo is not involved in this litigation.

3

telecommunications infrastructure. Transcom disagreed, arguing that it is exempt from these fees because it is an enhanced service provider.

After conducting a hearing and reviewing the parties' written briefs, on July 17, 2012, the Commission issued its "Order on Complaints," which included its factual findings and rulings. In this Order, the Commission found that Transcom was a common carrier, not an enhanced service provider. (*Id.* at 9-10.) Accordingly, the Commission ordered that Transcom and Halo cease and desist providing intrastate telecommunications service without authority of the Commission and that Halo pay all appropriate access fees and other expenses to the carriers. (*Id.* at 13-14.)

After unsuccessfully appealing to the Commission itself, (PSC Reh'g Order, attached as Ex. 2 to Am. Compl. [2]), plaintiff Transcom filed a complaint in this Court. The amended complaint contains eight counts. These counts can be divided into three categories: (1) claims seeking review of the Commission Orders (Counts 1 and 8);[2] (2) § 1983 claims alleging constitutional violations by the commissioners of the Georgia Public Service Commission (Counts 2 and 3); and (3) claims for damages against the TDS defendants and AT&T (Counts 4

---

[2] Count 1 seeks review of the Commission's Order pursuant to relevant portions of the Telecommunications Act allowing same. Count 8 seeks review pursuant to the Georgia Administrative Procedures Act.

4

through 7).

The TDS defendants have moved to dismiss Counts 4 through 7 under FED. R. CIV. P. 12(b)(1). (TDS's Mot. to Dismiss ("TDS's MTD") [22].) They argue that any success on these counts will require a finding that Transcom is an enhanced service provider, and not a common carrier: a finding that directly contradicts the findings of the Commission. (*Id*. at 15.) Thus, defendants argue that Transcom can succeed on these claims only if this or some other court reverses the findings of the Commission and concludes that Transcom is an enhanced service provider. (*Id*.) Until that occurs, TDS argues, the claims are not ripe and should be dismissed on that ground.

In its separate motion to dismiss, defendant AT&T has moved to dismiss Count 1 as well as Counts 4 through 7. (AT&T's Mot. to Dismiss ("AT&T's MTD") [21].) AT&T has also requested that this Court decline to exercise its supplemental jurisdiction over Count 8. (*Id.*) AT&T asserts that Count 1 should be dismissed because Transcom lacks standing under 47 U.S.C. § 252 to ask for an appellate review of the Commission's Order, as it is not a "party aggrieved," as required by the statute. (*Id*. at 21.) As to Counts 4 through 7, AT&T agrees with the TDS defendants that plaintiff Transcom cannot prevail on these claims, given the rulings of the Georgia Public Service Commission. In addition to that fact, AT&T has asserted other grounds that support dismissal, regardless of the outcome of

5

the administrative review of the Commission's Orders. (*Id.* at 10-11, 15, & 17-19.)  Finally, AT&T argues that, although this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to consider the state law claim brought in Count 8 to review and overturn the Commission's decision, the Court should decline to exercise jurisdiction because the state administrative review claim, brought pursuant to O.C.G.A. § 50-13-19, substantially predominates over the federal claims and the plaintiff has already filed a parallel action in Fulton County Superior Court.  (*Id.* at 22-23.)  That is, AT&T argues that the state court should be the judicial body to adjudicate this claim by conducting an administrative review of the Commission's Orders pursuant to the Georgia Administrative Procedure Act.

After these motions were filed, the parties submitted their Joint Report [30].  This report indicates that the parties have agreed that the "administrative review portion of the case" should be litigated before the other claims, with those other claims being stayed. (Joint Report [30] at 13.)  The parties stipulate that this administrative review portion of the case will not require any discovery because the review is confined to the record compiled before the Commission.  (*Id.* at 15.)

The Court is not clear, however, whether the parties mean that both Count 8 (review of Commission's decision pursuant to the Georgia Administrative Appeals Act) *and* Count 1 (challenge of Commission's

6

decision pursuant to 47 U.S.C. § 252) should proceed simultaneously, or whether they contend that Count 1 should also await a decision on the Count 8 claim. As discussed below, that distinction could be important in deciding whether to decline supplemental jurisdiction on Count 8.

## DISCUSSION

### I. Motion to Stay or Bifurcate [23]

The TDS defendants' motion to stay or bifurcate [23] requests that the Court bifurcate and proceed first with Count 8--the state law claim for judicial review of the Commission's decision--and stay consideration of the additional claims. (Mot. to Bifurcate [23] at 14.) This motion mimics the sequencing of claims that the parties later agreed to in the Joint Report. Accordingly, in the event that the Court proceeds at all on Count 8, it will follow the agreed-upon order of litigation. *See* discussion below. For this reason, the TDS defendants' motion to stay or bifurcate [23] is **DENIED as moot.**

### II. TDS Defendants' Motion to Dismiss [22]

The TDS defendants base their motion to dismiss on the fact that "the viability of Transcom's additional claims is entirely contingent on the outcome of this Court's review of the PSC Orders [in Count 8]." (TDS's MTD [22] at 12.) As the Court had indicated that review of the challenge to the Commission's Order should proceed first, with other claims stayed, TDS has obtained the relief it seeks through

this motion. Accordingly, the TDS defendants' motion to dismiss [22] is **DENIED without prejudice.**

### III. AT&T's Motion to Dismiss [21]

AT&T's motion to dismiss [21] is much more complicated and difficult to determine on the present briefing.  As to the easy parts--Counts 4-7--the Court has already indicated that it will stay those counts pending a review of challenges to the Commission's Orders.  Accordingly, even though AT&T says that these counts should be dismissed no matter what happens with those challenges, the Court does not have to reach the merits of AT&T's motion to dismiss Counts 4-7, and this part of the motion is **DENIED WITHOUT PREJUDICE.**

As to the harder part of this motion, AT&T requests that this Court first dismiss Count 1, on the ground that plaintiff lacks standing, and that it then decline to exercise its supplemental jurisdiction over Count 8.  (AT&T's MTD [21] at 22-23.)  Looking first at Count 1, AT&T notes that a state public utility commission's decision can be challenged only in federal court pursuant to 47 U.S.C. § 252.  Further, according to AT&T, the only entity that can bring a challenge in federal court, pursuant to § 252(e)(6), is a "party aggrieved" by the state commission's decision.  And the only such decisions that can be challenged are "decisions that arbitrate, approve, or enforce interconnection agreements." (*Id.* at 21.)  AT&T argues that because plaintiff Transcom was not a party to any

interconnection agreement--it was Halo that had the interconnection agreement--plaintiff cannot be a party that was aggrieved by the Commission's decision.  Indeed, AT&T notes that it was the company that had the agreement with Halo and that AT&T filed its complaint before the Commission only against Halo, not against plaintiff Transcom.  (*Id.*)

In response, plaintiff Transcom insists that it was a "party aggrieved," but plaintiff never adequately responds to AT&T's argument that plaintiff has to be a party aggrieved as to the Commission's determination concerning an interconnection agreement. In fact, plaintiff's argument on this point is conclusory and cites to no apt legal authority.

Obviously, then, plaintiff's response does not provide much reassurance to the Court that it should permit plaintiff to litigate this claim.  The strongest argument that plaintiff makes is to note that the Georgia Commission has not moved to dismiss this count; nor have the TDS defendants.  So, it seems that plaintiff and all defendants except AT&T want to see Count 1 proceed.  But while that is curious, and maybe telling, it is not a terribly persuasive legal position.

On the other hand, while defendant AT&T has been able to articulate the two preconditions for a § 252 challenge and to make an argument that the plaintiff perhaps does not literally meet one of

9

those elements, defendant is also pretty weak on legal authority. Perhaps, this means that there is little, or no, authority directly on point. Moreover, defendant appears to concede that Counts 1 and 8 are essentially clones of each other, with the only difference being that each statute looks to a different forum to adjudicate the respective statutes: "And the last remaining count, Count 1, effectively raises the same issues as Count 8, just under the guise of federal law instead of the state review process." (*Id.* at 23.) Moreover, while AT&T casts the Commission's action against plaintiff Transcom as being separate from the action it took against Halo, the Commission consolidated the complaints against the two entities and the facts underlying its ruling on each greatly overlap.

The question comes down to how narrowly the term "party aggrieved," found in § 252, should be defined. If it is literally defined as including only the entity that had the interconnection agreement (Halo), then plaintiff Transcom would seem to be out of luck in hitching its Count 1-wagon to a Commission ruling whose remedy concerning an interconnection agreement applied only to Halo. If "party aggrieved [by a ruling on an interconnection agreement]," can be more broadly defined to include entities that were negatively affected by the Commission's decision concerning Halo's interconnection agreement with AT&T, even if those entities were not parties to that agreement, then plaintiff's Count 1 claim may

10

survive.  After all, plaintiff Trancom's business model appeared to depend on it structuring its connection operations in a way to avoid paying the access fees that the Commission indicated it should have been paying to local carriers.  While defendants contended before the Commission that the plaintiff was essentially stealing their services through a clever technical argument that masked the reality of what plaintiff was actually doing, the alleged chicanery of plaintiff does not mean that it was not aggrieved when its machinations were disavowed by the Commission.

Clearly, though, given that the conjecture articulated above is not supported by any caselaw or regulatory authority or practices, any decision that the Court might make now on this question would essentially be a coin toss.  That uncertainty means that the party which is moving for a particular result will not prevail.  Accordingly, if defendant AT&T wishes to pursue its request to dismiss Count 1 on the ground that plaintiff Transcom has no standing because it is not a "party aggrieved," the Court will need more thorough and persuasive briefing.

Without knowing whether Count 1 will remain with this Court, it is difficult for the Court to decide whether it should abstain on Count 8.  If Count 1 goes away, then AT&T's argument against exercising supplemental jurisdiction over Count 8 seems almost unassailable.  Without the federal cause of action permitting this

11

Court to adjudicate the Georgia Commission's decision, there will be no pending federal claims as these other claims have been stayed because they will likely have no chance of success if the Commission's decision is not overturned. To litigate Count 8 in that scenario does seem to be allowing the Count 8 state-law tail to wag the proverbial dog.

If Count 1 remains, one could argue that it would be more efficient for the parties to litigate Counts 1 and 8 together, as there will presumably be some replication of issues. On the other hand, efficient for the parties is not necessarily efficient for this Court, whose resources are undoubtedly much thinner than are the parties. If the state court can adjudicate Count 8, which it can, and if this adjudication would resolve Count 1, which it presumably would, and if the other counts would then be dismissed upon an affirmance of the Commission's order, then allowing the state court to conduct the review under the Georgia Administrative Procedures Act seems highly efficient from this Court's point of view.

The only factor that might undercut that argument is plaintiff's argument that most of the issues asserted in the review of the Commission decision under the state administrative procedures law, set out in Count 8, are highly dependent on federal law and, in particular, on the construction of federal communications law. That might initially make a federal court seem to be a better candidate

for the job at hand. Yet, there is either federal question jurisdiction or there is not. And here plaintiff is not asserting that there is federal question jurisdiction. In fact, plaintiff concedes that the Court's jurisdiction over Count 8 arises only as a supplement to its jurisdiction over the remaining counts, all of which assert federal statutes as giving rise to the particular causes of action.

In short, the Court needs to be better educated and better convinced before throwing out Count 1 and abstaining on Count 8. For that reason, defendant AT&T's motion to dismiss [21] is **DENIED WITHOUT PREJUDICE** as to Count 1 and its constructive motion to abstain on Count 8 is likewise **DENIED WITHOUT PREJUDICE.**

Should AT&T wish to revisit this matter, it may refile a motion to dismiss/abstain on these two counts. The Court will, however, defer setting a deadline for that motion until it becomes clear whether plaintiff Transcom intends to proceed with this litigation. Specifically, absent a persuasive objection by July 29, the Court will be granting the motion of plaintiff's local counsel to withdraw. As a corporation, plaintiff must be represented by counsel to proceed with its case. Should the Court grant that motion on July 29, it will set a deadline for new local counsel to appear. If plaintiff fails to meet that deadline, the Court will dismiss plaintiff's case, litigation will be concluded in federal court, and all of these

13

issues will then be moot.  Accordingly, the Court will set a new deadline for AT&T to file a renewed motion to dismiss after the status of plaintiff's representation is determined.

One important caveat on any future pleadings filed by AT&T: AT&T must follow the Local Rules regarding formatting of their pleadings, and in particular, LR 5.1, NDGa.  AT&T's current pleadings are written in a Times New Roman font significantly smaller than the 14-point font called for by LR 5.1C, NDGa.  (*See*, e.g., AT&T's MTD [21].)  Besides creating a document with small print that is difficult to read, it appears that AT&T was trying to get around the page limits set out by local rule.  The Court will always consider a meritorious motion to extend the page limit, but greatly resents straining its eyes on pleadings written by attorneys  who seek to achieve that same result by simply ignoring another part of the Court's local rules.

### CONCLUSION

For the above reasons, the TDS defendants' motion to stay or bifurcate [23] and their motion to dismiss [22] are **DENIED as moot.** Defendant AT&T's motion to dismiss [21] is **DENIED but with a right to re-file** on a deadline to be later set by the Court.  Any future pleadings filed by AT&T will be struck if they do not comply with the applicable local rules.

14

SO ORDERED, this 25th day of July, 2013.


                                          /s/ Julie E. Carnes
                                          JULIE E. CARNES
                                          CHIEF UNITED STATES DISTRICT JUDGE